CHRISTOPHER WARD, CA Bar No. 238777
   cward@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:   213.486.0065

KEVIN JACKSON, CA Bar No. 278169
   kjackson@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE:   858.792.6773

Attorneys for Defendants AURORA BEHAVIORAL HEALTHCARE-SANTA ROSA, LLC, A CALIFORNIA CORPORATION DBA SANTA ROSA BEHAVIORAL HEALTHCARE HOSPITAL; and SIGNATURE HEALTHCARE SERVICES, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH MARTIN, on behalf of herself and others similarly situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>AURORA BEHAVIORAL HEALTHCARE-SANTA ROSE, LLC, a California Corporation dba SANTA ROSA BEHAVIORAL HEALTHCARE HOSPITAL; SIGNATURE HEALTHCRE SERVICES, LLC, a Michigan corporation; and DOES 1 to 100, Inclusive,<br><br>                Defendants. | Case No. 3:23-cv-01891<br><br>**DEFENDANTS AURORA BEHAVIORAL HEALTHCARE-SANTA ROSA, LLC AND SIGNATURE HEALTHCARE SERVICES, LLC'S NOTICE OF REMOVAL OF ACTION (DIVERSITY JURISDICTION)**<br><br>Filed concurrently with:<br><br>i.   Declaration of Kevin Jackson;<br>ii.  Declaration of Ryan Davis;<br>iii. Civil Cover Sheet;<br>iv. Certification of Interested Entities and Parties; and<br>v.  Proof of Service |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

**PLEASE TAKE NOTICE** that Defendants AURORA BEHAVIORAL HEALTHCARE-SANTA ROSA, LLC,[1] A CALIFORNIA CORPORATION DBA SANTA ROSA BEHAVIORAL HEALTHCARE HOSPITAL ("Aurora") and SIGNATURE HEALTHCARE SERVICES, LLC ("Signature") (collectively, "Defendants") pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 118 Stat. 4 ("CAFA"), hereby invokes this Court's jurisdiction and removes the above-captioned case, pending in the Superior Court of California, Sonoma County, Case No. SCV-272369, to the United States District Court for the Northern District of California on the following grounds:

## I. PROCEDURAL HISTORY

1. On January 6, 2023, Plaintiff Deborah Martin ("Plaintiff") commenced this action by filing an unverified Complaint in the Superior Court of California, County of Sonoma, entitled "DEBORAH MARTIN, on behalf of herself and all others similarly situated v. AURORA BEHAVIORAL HEALTHCARE SANTA ROSE, LLC, a California corporation dba SANTA ROSA BEHAVIORAL HEALTHCARE HOSPITAL; SIGNATURE HEALTHCARE SERVICES, LLC, a Michigan corporation; and DOES 1-100, inclusive" Case No. SCV-272369 (the "Complaint"). Defendant received service of the Complaint on or around March 20, 2023. [Declaration of Kevin Jackson ("Jackson Decl."), ¶ 2.] A true and correct copy of Plaintiff's Complaint is attached to the Declaration of Kevin Jackson as Exhibit A.

2. Plaintiff has brought this action as a class action "on behalf of [herself] and other current and former non-exempt employees of Defendants in California seeking within the applicable statute of limitations periods: failure to pay wages for all hours worked at minimum wage and all overtime hours worked at the overtime rate of pay; failure to authorize or permit all legally required and compliant meal periods and/or pay meal period premium wages; failure to authorize or permit all legally required and compliant rest periods and/or pay rest period premium wages; failure to pay accrued and vested vacation/PTO wages; failure to provide sick pay; failure to indemnify all necessary expenditures or

---

[1] Improperly named as "Aurora Behavioral Healthcare-Santa Rose, LLC.

losses incurred by employees in direct consequence of discharging their duties; statutory penalties for failure to timely pay earned wages during employment; statutory waiting time penalties in the form of continuation wages for failure to timely pay employees all wages due upon separation of employment; statutory penalties for failure to provide accurate wage statements; injunctive relief and other equitable relief, reasonable attorney's fees pursuant to Labor Code sections 218.5, 226(e), 1194, costs, interest, and liquidated damages, brought on behalf of Plaintiff and others similarly situated." [Jackson Decl., Ex. A, ¶1.]

3. The Complaint alleges 11 causes of action, both on behalf of Plaintiff individually and on behalf of other similarly situated employees: (1) Failure to Pay Wages; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Failure to Pay All Accrued and Vested Vacation/PTO Wages; (6) Failure to Provide Sick Pay; (7) Failure to Indemnify; (8) Failure to Timely Pay Earned Wages During Employment; (9) Waiting Time Penalties; (10) Failure to Provide Accurate Itemized Wage Statements; and (11) Unfair Competition. [Jackson Decl., Ex. A.]

4. Defendants filed and served their Answer to the Complaint on April 18, 2023. A true and correct copy of Defendants' Answer is attached to the Jackson Decl. as Exhibit B

5. A true and correct copy of the state court docket in the Superior Court of California, County of Sonoma is attached to the Jackson Declaration as Exhibit C.

## II. REMOVAL IS PROPER UNDER CAFA

6. The Action as filed in the Superior Court is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by CAFA, because the matter in controversy as reasonably alleged in the Complaint exceeds the value of $5,000,000, exclusive of interest and costs, and is a class action in which (i) at least one member of the class is a citizen of a state different than Defendant, and (ii) the proposed class includes at least 100 members. 28 U.S.C. § 1332(d)(2)(A) and (C); 18 U.S.C. § 1332(d)(5); [Declaration of Ryan Davis ("Davis Decl.") at ¶¶ 2-3; Jackson Decl., Ex. A.]

7. This Notice of Removal is proper and timely pursuant to 28 U.S.C. § 1446(b)(1) because it is filed within 30 days after Plaintiff's March 20, 2023 service of the summons and the Complaint on Defendants. [Jackson Decl., ¶ 2.]

8. Notice of this removal will be properly given to Plaintiff and the Superior Court pursuant to 28 U.S.C. § 1446(d)

## III. THE COMPLAINT ASSERTS A CLASS ACTION

9. A removable class action includes "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought under one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiff alleges her claims as class claims pursuant to California Code of Civil Procedure section 382. [Jackson Decl., Ex. A at ¶ 2.] California Code of Civil Procedure section 382 has requirements similar to those required under Federal Rule of Civil Procedure 23, including, among other things, requirements of numerosity of class members, commonality of the questions of law and fact, typicality of claims and defenses of the class, the common questions predominate, and adequacy of protection of the interests of the class by the class representatives. *Compare* Fed. R. Civ. P. 23(a) *with* California Code of Civil Procedure section 382. Plaintiff alleges that his claims meet the requirements to maintain a class action under California Code of Civil Procedure 382. [Jackson Decl., Ex. A at ¶¶ 56-57.] Therefore, the Action is a removable class action pursuant to 28 U.S.C. § 1332(d).

## IV. THE CITIZENSHIP OF THE PARTIES IS MINIMALLY DIVERSE

10. Diversity among parties to a class action need only be minimally diverse, such that the citizenship of only one member of the putative class must be diverse from the citizenship of only one defendant. 28 U.S.C. § 1332(d)(2)(A).

11. At the time of the filing of the action and at the time of filing this Notice of Removal, Plaintiff was and still is a citizen of California, inasmuch as Plaintiff alleges that at "all times mentioned herein, the currently named Plaintiff is and was a resident of California[.]" [*See* Jackson Decl., Ex. A, Complaint at ¶3.] For purposes of assessing diversity jurisdiction, Plaintiff is a citizen of the State of California. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) (holding that for diversity purposes, a person is a citizen of the state in which they are domiciled); *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) (holding that a party's allegation of minimal diversity may be based on "information and belief").

12. Aurora Behavioral Healthcare-Santa Rosa, LLC is a California limited liability company. [*See* Jackson Decl., Ex. A, Complaint at ¶ 1; *see also* Davis Decl., ¶ 2.] It has one member – Signature Healthcare Services, LLC ("Signature"), which is a Michigan limited liability company and is also a party to this action. [Davis Decl., ¶ 2.] In turn, Signature has one member—Dr. Soon K. Kim, who is domiciled in Michigan. [*Id.*] For purposes of diversity jurisdiction, a limited liability company "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Accordingly, Aurora is a citizen in every state in which its sole member—Signature—is a citizen. Signature, through Dr. Kim, is thus a citizen of Michigan; in turn, Aurora is a citizen of Michigan for purposes of diversity of citizenship.

13. Therefore, minimal diversity exists among the parties since the citizenship of Plaintiff is diverse from Defendants.

## V. THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

14. The purported class, as alleged by Plaintiff in Paragraph 27 of his Complaint, is defined as "current and former non-exempt employees of Defendants in California seeking within the applicable statute of limitations periods [i.e., four years prior to the filing of the Action][.]" [Jackson Decl., Ex. A at ¶1.] Plaintiff breaks this class into 13 sub-classes, which collectively form the "California Class." [*Id.* at ¶ 56.] Plaintiff concedes that the "classes are so numerous that the individual joinder of all members is impractical under the circumstances of this case." [*Id.* at ¶ 57(A).] In fact, there are approximately 788 current and former non-exempt employees, including Plaintiff, over the class period (as alleged by Plaintiff, the class period is four years preceding the filing of the Complaint through present). [Jackson Decl., Ex. A at ¶56; Davis Decl., ¶3.] The proposed class thus meets the jurisdictional threshold of at least 100 members pursuant to 28 U.S.C. §1332(d)(5).

## VI. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

15. To meet the amount in controversy requirement for removal under 28 U.S.C. § 1332(d)(2), Defendants need only set forth a plausible allegation or set of allegations indicating that the amount in controversy exceeds $5,000,000. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) (the Court looks to whether the actual underlying facts support the required amount in controversy, as established by a "short and plain statement" of those actual facts).

16. Although Defendants dispute they are liable to Plaintiff or the putative class for any of the damages alleged in the Complaint, the amount in controversy exceeds $5,000,000 based on Plaintiff's claims. Plaintiff alleges that she and the putative class members were not compensated for all time worked, were not paid minimum wage for all hours worked, were not paid overtime, were not provided meal and rest periods, did not have all applicable compensation included in their regular rate of pay calculations, were not paid sick leave, were not paid accrued and vested vacation/PTO upon termination, as well as derivative claims for failure to provide accurate itemized wage statements and waiting time penalties. [Jackson Decl., Ex. A at ¶¶13-55.] She therefore seeks damages according to proof, unpaid wages, "all legally applicable penalties, liquidated damages, pre-judgment interest, attorneys' fees, and equitable relief. [Jackson Decl., Ex. A at ¶1, Prayer for Relief.]

17. <u>Minimum Wage Violations</u>. Plaintiff alleges Defendants required her and the putative class to work off the clock. [*See* Jackson Decl., Ex. A, Complaint at ¶¶14-16, 62-63.] She further alleges that Defendants "employed a policy, practice, and/or procedure whereby they automatically deducted 30 minutes from employees' daily hours worked and attributed that time to a first meal period, even though Defendants either did provide employees with a meal period, or routinely provided employees meal periods of less than 30 minutes." [*Id.*] Plaintiff seeks to recover "unpaid minimum wage, interest thereon, liquidated damages in the amount of their unpaid minimum wage, and attorneys' fees and costs." *Id.* The minimum wage in California during 2022 was $15 per hour. [Jackson Decl., ¶ 7(a).] Assuming, conservatively, that Plaintiff was not paid for one hour of work per week, and using the minimum wage of $15 for time period that she worked, Plaintiff's unpaid minimum wages claim would total $3,120 ($15 per week multiplied by 208 weeks). [*See* Jackson Decl., Ex. A, Complaint at ¶4.] Plaintiff seeks double that amount in liquidated damages, for a total of $6,240. Multiplying by 788 putative class members results in a total of $4,917,120 in alleged minimum wage liability. [Jackson Decl., ¶ 7(c).] It is therefore plausible that Plaintiff's unpaid minimum wage allegations total **$4,917,120**.

18. <u>Failure to Pay All Overtime Wages.</u> Plaintiff alleges Defendants caused her to work overtime hours, but did not pay for all hours worked at the required overtime rates. [Jackson Decl., Ex. A at ¶¶ 16-18.] While Plaintiff does not allege the specific number of alleged unpaid overtime hours she

worked, she claims that Defendants made her and other putative class members work off the clock, automatically deducted 30 minutes for meal periods that were not taken or were short, and failed to take into account all remuneration in calculating the regular rate of pay." [*Id*. at ¶ 45.] Plaintiff's rate of pay was $23.18 per hour during the class period. [Davis Decl., ¶ 4.] Using Plaintiff's rate of pay, and assuming conservatively one hour per week of unpaid overtime at time and a half, which is a rate of $34.77 per hour, Plaintiff's unpaid overtime claim would be valued at $34.77 per week. [Jackson Decl., ¶ 8(a).] Plaintiff worked for Aurora for 208 weeks during the operative time period. [*See* Jackson Decl., Ex. A, Complaint at ¶4; Davis Decl., ¶ 4.] $34.77 of weekly alleged unpaid overtime multiplied by 208 weeks totals $7,232[2] (0.12 cents rounded off). [Jackson Decl., ¶ 8(a).] Assuming, as Plaintiff alleges, that her claims are representative of the claims of all putative class members, multiplying Plaintiff's potential overtime claim of $7,232 by 788 putative class members, results in $5,698,816 as an estimate of alleged overtime liability for the class. [Jackson Decl., ¶ 8(b).] It is therefore plausible that Plaintiff's unpaid overtime allegations total **$5,698,816**.

19. <u>Meal Period Violations</u>.  Plaintiff alleges that Defendants failed to provide her with legally compliant meal periods because Defendants' "systematic company policy pressured and/or required employees to work without receiving meal periods, or the meal breaks were interrupted, untimely, taken while working, and/or were shorter than 30 minutes." [Jackson Decl., Ex. A at ¶28.] Non-compliant meal periods are subject to a premium of one hour of straight pay. Cal. Labor Code § 226.7. Using Plaintiff's average straight time rate of $23.18, and conservatively assuming one meal period violation per week, she would be entitled to $23.18 per week, making the meal period liability total $4,821 (208 weeks x 1 violation per week). [Jackson Decl. ¶ 9(a).] That number multiplied by 788 class members results in total alleged liability of $3,798,948. [Jackson Decl. ¶ 9(c).] It is therefore plausible that Plaintiff's meal period violation allegations total **$3,798,948**.

20. <u>Rest Period Violations</u>.  Plaintiff similarly alleges that Defendants "regularly failed" to provide lawful rest periods. [Jackson Decl., Ex. A at ¶35.] The premium for non-compliant rest periods is the same as the premium for non-compliant meal periods, one hour of straight pay. Cal. Labor Code §

---

[2] For ease of readability, Defendants round down to whole numbers excluding cents throughout the calculations in this Notice of Removal. This slightly *underestimates* the amount in controversy, which is not a benefit to Defendants and of no prejudice to Plaintiff.

226.7. Again, conservatively assuming only a single rest period violation per week, the same calculations that apply to the meal period claim apply to this claim, meaning Plaintiff's alleged liability totals $4,821. [Jackson Decl. ¶ 9(c).] That number multiplied by 788 class members results in total alleged liability of $3,798,948. [Jackson Decl. ¶ 9(c).] It is therefore plausible that Plaintiff's rest period violation allegations total **$3,798,948**.

21. <u>Wage Statement Violations.</u> Plaintiff also seek penalties for allegedly inaccurate wage statements for the time period of one year prior to the filing of the Complaint to the present, which covers the last five months of Plaintiff's employment. [Jackson Decl., Ex. A at ¶138.] Pursuant to Labor Code Section 226(a), these penalties are a $50.00 initial violation for the first pay period and $100.00 violation for every subsequent pay period, up to a maximum of $4,000.00. Defendant operates on a biweekly payroll period cycle, such that in the period of January 6, 2022 to May 18, 2022 weeks that Plaintiff worked, she allegedly suffered 11 wage statement violations. [Davis Decl., ¶ 5.] Based on the allegations in the Complaint, Plaintiff would receive an alleged penalty of **$1,050** calculated as $50 for the first violation and $100 for each of the remaining 10 pay periods. [Jackson Decl. ¶ 10(b).] The penalty estimate with 788 putative class members is $827,400 (788 x $1,050). [Jackson Decl. ¶ 10(c).] It is therefore plausible that Plaintiff's rest period violation allegations total **$827,400**.

22. <u>Waiting Time Penalties.</u> Plaintiff seeks waiting time penalties for alleged failure to pay all wages due at termination. [Jackson Decl., Ex. A at ¶26.] Plaintiff seeks waiting time penalties of up to 30 days wages under California Labor Code Section 203. [Jackson Decl., Ex. A ¶ 48.] Plaintiff's final rate of pay was $23.18. [Davis Decl., ¶ 4.] Multiplying Plaintiff's final pay rate by eight hours per day by 30 days results in a total of $5,563 in waiting time penalties attributable to Plaintiff's individual claim. [Jackson Decl. ¶ 11(a).] Of the 788 putative class members, approximately 571 are former employees who would be allegedly entitled to waiting time penalties. [Davis Decl., ¶ 3.] Taking Plaintiff's alleged waiting time penalties of $5,563 multiplied by 571 former putative class members totals $4,058,400. [Jackson Decl. ¶ 11(a).] It is therefore plausible that Plaintiff's waiting time allegations total **$3,176,473**.

23. Based on the amounts in controversy for each claim, as set forth above, the total damages sought plausibly amounts to **$22,217,705.** [Jackson Decl. ¶ 12.]

24. <u>Attorneys' Fees</u>

a. Plaintiffs also seek class-wide attorneys' fees, an amount properly included in the amount in controversy calculation for class action removal purposes under 28 U.S.C. § 1332(d)(2). *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (overruled on other grounds) (showing attorneys' fees are properly considered for the amount in controversy when attorneys' fees are authorized by the underlying statute); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001) (showing attorneys' fees are considered on a class-wide basis as opposed to solely named plaintiffs). In the Ninth Circuit, a conservative estimate for attorneys' fees associated with prosecuting a class action case is approximately 12.5% of the total amount in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). Thus, for purposes of calculating the amount in controversy for diversity jurisdiction, the above damages calculations should be increased by an additional 12.5% or **$2,777,213** to represent the estimated attorney's fees associated with prosecuting this Action. [Jackson Decl., ¶ 13.]

25. Based on the foregoing, there is "a plausible allegation" that the amount in controversy set forth in the Complaint—**$24,994,918** (alleged damages sought plus attorneys' fees and costs— far exceeds the jurisdictional threshold for class actions and removal to this Court pursuant to diversity jurisdiction under 28 U.S.C. §1332(d) is proper. *See Lewis v. Verizon Commc'ns*, 627 F.3d 395, 401 (9th Cir. 2010), *citing Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("once the proponent of federal jurisdiction has explained plausibly how the stakes exceed the $5 million … then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much").

**VII.   <u>VENUE AND INTRADISTRICT ASSIGNMENT</u>**

26. Venue of this Action is proper in this District pursuant to 28 U.S.C. § 1441(a) because the Superior Court of the State of California, for the County of Sonoma, where this case was filed, is located within the jurisdictional boundaries of the Northern District of California. Moreover, the case is properly venued in the San Francisco Division or Oakland Division of this District because Plaintiff initiated this action in Sonoma County and performed services for Aurora in Santa Rosa, California, which lies within the County of Sonoma. [*See* Civil L.R. 3-2(d).]

///

## VIII. CONCLUSION

27. As outlined above, this Court has original jurisdiction over the Action under CAFA and pursuant to 28 U.S.C. § 1332(d) such that the entire action may be therefore removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

28. Wherefore, Defendants pray that this action be removed from Superior Court for the State of California, County of Sonoma to the United States District Court for the Northern District of California, and for such further relief as may be just and proper.

29. Pursuant to 28 U.S.C. § 1446(d), Defendants are filing written notice of this removal with the clerk of the Superior Court for the State of California, County of Sonoma. [Jackson Decl., ¶5.] Copies of this Notice of Removal are also being served on Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d). [*Id.*]

30. This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to, defenses and objections to venue, improper service of process, and personal jurisdiction. No admission of fact, law or liability is intended by this Notice of Removal, and all defenses, motions and pleas are expressly reserved.

DATED: April 19, 2023

**FOLEY & LARDNER LLP**
Christopher Ward
Kevin Jackson


/s/ Kevin Jackson
Kevin Jackson
Attorneys for Defendants AURORA BEHAVIORAL HEALTHCARE-SANTA ROSA, LLC, A CALIFORNIA CORPORATION DBA SANTA ROSA BEHAVIORAL HEALTHCARE HOSPITAL; and SIGNATURE HEALTHCARE SERVICES, LLC